## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. <br><br> 20-cv-15280 (JXN) (JRA) <br><br> **OPINION AND ORDER** |

Plaintiff Insurance Company of the State of Pennsylvania ("ICSP") moves to compel the production of privileged attorney-client information, as well as potentially privileged attorney work product, that Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") allegedly relied upon to make its coverage determination related to an underlying claim ("the Motion").  ECF Nos. 106, 110. Liberty Mutual opposes the Motion.  ECF No. 109.  The Court has considered the parties' submissions and decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b).  For the reasons set forth below, ICSP's Motion is **DENIED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY[1]

This case is about two insurance companies disputing who should cover the cost of a state litigation that resulted in a $2,579,000.00 verdict against Jacobs Engineering, Inc. ("Jacobs"), an insured.  *See generally* Compl., ECF No. 1.

---

[1] The Court assumes the parties' familiarity with the facts and procedural history of this matter and therefore only recites those which are necessary for resolution of the instant motion.  For a full recitation of the facts and procedural history of this matter, the Court refers the parties to the Court's prior opinions at ECF No. 64 at 2-6 and ECF No. 89 at 1-2.

Specifically, in *Joao Abilio Silva, et al. v. Jacobs Engineering Group, Inc., et al.* (the "Silva Action"), the plaintiff sued Jacobs, and others, in connection with an accident that occurred at a construction job site on December 10, 2013. Compl. ¶¶ 27-28. That case proceeded to trial in state court, resulting in the jury returning a $2,579,000.00 verdict against Jacobs. *Id.* ¶ 33; *see* ECF No. 44-36 (demonstrating the order of judgment was entered by the state court on January 17, 2020).

ICSP, which insured Jacobs, provided coverage and defense costs for the Silva Action. Compl. ¶¶ 34-35. On July 2, 2020, months after the trial had concluded, ICSP wrote to Liberty Mutual, demanding that Liberty Mutual provide coverage and pay ICSP the policy limit of $1,000,000 because Jacobs was "an additional insured" under Liberty Mutual's Commercial Automobile General Liability Policy No. AS2-631-509639-013 (the "Liberty Mutual Auto Policy"). ECF No. 106-5; *see* Compl. ¶¶ 21-23, 37-38. That letter marked the first time ICSP had made a demand of Liberty Mutual in connection with the Silva Action. ECF No. 64 at 5. About a month later, on August 7, 2020, Liberty Mutual responded to ICSP's demand letter, denying coverage for Jacobs and rejecting ICSP's demand for indemnification and contribution. *See* ECF No. 106-6. Liberty Mutual explained in that letter that, in its view, Jacobs was not an "additional insured" under its policy and, even if it were, the claim would still be denied because ICSP tendered the claim after the Silva Action had been tried and judgment had been entered against Jacobs. *See id.* at 3.

Shortly after Liberty Mutual sent its denial letter, ICSP initiated the instant litigation and filed its three-count complaint against Liberty Mutual on October 30,

2

2020.  *See generally* Compl.  After summary judgment motions by both parties, the Honorable Julien X. Neals, U.S.D.J., concluded that Jacobs was an additional insured under the Liberty Mutual Auto Policy.  ECF Nos. 64-65.  On August 15, 2024, Judge Neals denied Liberty Mutual's motion for reconsideration.  ECF Nos. 89-90.  But Judge Neals also concluded that there are issues of material facts for the jury to decide, including whether ICSP waived, or is estopped from, recovery because it did not tender a defense of the Silva Action to Liberty Mutual until after the jury verdict in that matter.  *See* ECF No. 89 at 8-12.  The parties refer to this as the "late notice affirmative defense," meaning that Liberty Mutual asserts that it was deprived of the opportunity to participate in the Silva Action and, perhaps, obtain a better result than ICSP, due to the late notice of the claim.  *See generally* ECF Nos. 106, 109-10.

Discovery in this case began on March 23, 2021.  ECF No. 12.  What is left is the instant dispute.  It all boils down to this—ICSP wants Liberty Mutual's attorney-client communications and work product because Liberty Mutual's corporate designee, David Guertin, testified as follows at a deposition, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure:

> Q. So given Judge Neals' recognition that Jacobs Engineering is an additional insured, was it ever certain that Jacobs Engineering is not an additional insured?
>
> MR. JONES: Objection.
>
> A. The adjusters were working off of their review of the policy and of the advice of counsel, and that's what they relied upon.
>
> Q. So when the adjusters made that determination, who was that specifically?

A. At the time of the Cullen Dykman was Ryan Barr.

Q. Do you know whether Ryan Barr believed there was any risk that Jacobs Engineering could be an additional insured?

MR. JONES: Objection.

A. Based on their analysis, they found them to not be an additional insured.

Transcript of Deposition of David Guertin ("Guertin Dep.") 134:3-20, ECF No. 106-7. Mr. Guertin was also asked if Liberty Mutual's claim adjuster took steps to investigate whether Jacobs had other insurance. *Id.* at 131:8-10. Mr. Guertin responded, in part, that Liberty Mutual did not do so because it had determined that Jacobs was not its insured and, therefore, it would have been "strange to seek out coverage for a non-covered entity," because Liberty Mutual "would have no grounds for seeking additional coverage." *Id.* at 131:8–133:13. On January 10, 2025, ICSP filed the instant motion to compel, which Liberty Mutual opposed. ECF Nos. 106, 109-10. What ICSP seeks to compel are:

> All documents and communications pertaining to the guidance, advice, or recommendations to [Liberty Mutual]'s adjuster(s) on the issue of Jacobs' entitlement to coverage under the [Liberty Mutual Auto] Policy that [Liberty Mutual]'s corporate designee referred to during the December 10, 2024 deposition as being relied upon by the adjuster(s) in determining whether to investigate whether Jacobs had professional liability coverage and to tender to any such insurance carriers on behalf of Jacobs for the Silva Action.

ECF No. 106-4 at 11; ECF No. 106-1 at 3-4. The Court notes that no documents or communications have been produced for *in camera* review; rather, ICSP's arguments

in support of its request to compel are broad-based challenges to Liberty Mutual's claims of privilege.

## II.    LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  The material "need not be admissible in evidence to be discoverable."  *Id.*  When a party refuses to produce relevant information, the opposing party may move to compel such production pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.  It is the moving party's burden to show that the information sought is relevant.  *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citation omitted).

Just because information is relevant does not mean it needs to be produced.  It is worth emphasizing that relevant information must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  In determining what is proportional, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*; *see EEOC v. FAPS, Inc.*, No. 10-cv-3095, 2012 WL 1656738, at *23 (D.N.J. May 10, 2012). The Court may limit discovery and resolve discovery disputes as it deems appropriate.  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "Magistrate Judges are given wide discretion to manage cases and to limit discovery

in appropriate circumstances." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) (citations omitted).

Assuming that the information is "relevant" and "proportional," the Court may still deny a party access to that information if the information is "privileged," barring some exceptions. *See* Fed. R. Civ. P. 26(b)(1). Here, two privileges are being invoked: the attorney-client privilege and the attorney work product privilege.

## A. Attorney-Client Privilege

Because this Court's jurisdiction is based on the parties' diversity of citizenship, New Jersey State law applies. *Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*, No. 14-cv-4410, 2018 WL 1757025, at *3 (D.N.J. Apr. 12, 2018) (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) ("A federal court sitting in diversity applies state law when deciding issues of privilege.")). "While the federal attorney-client privilege is absolute, the New Jersey state privilege is qualified." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citations omitted). Generally, under New Jersey law, the attorney-client privilege "applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. Ct. App. Div. 2013) (citation omitted). "Application of the privilege is . . . to be strictly construed to achieve its underlying purpose, in light of the reason for its assertion and the attorney's ethical obligations under the unique circumstances of each case." *Horon Holding Corp. v. McKenzie*, 775 A.2d 111, 116 (N.J. Super. Ct. App. Div. 2001)

6

(citations omitted); *see also* N.J.R.E. 504 (providing that the privilege is limited to "communications between a lawyer and his client in the course of that relationship and in professional confidence"); *Paff v. Div. of L.*, 988 A.2d 1239, 1246 (N.J. Super. Ct. App. Div.) (citations and internal quotation marks omitted) ("The attorney-client privilege is of course limited to communications made to the attorney in his professional capacity."), *cert. denied*, 994 A.2d 1040 (N.J. 2010).

New Jersey recognizes that the attorney-client privilege creates tension between two competing social values. On the one hand, "sound legal advice or advocacy serves public ends and rests on the need to 'encourage full and frank communication between attorneys and their clients.'" *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 825 (N.J. Super. Ct. App. Div. 1984) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). On the other hand, the privilege at times may conflict with the goals of justice because it can "result[] in suppression of evidence and to that extent [it] is at war with the truth." *Id.* (citations omitted). It is worth noting that the privilege also extends to corporations and protects "communications between an attorney and the corporation's employees, including lower level employees . . . where doing so would give effect to the purposes of the privilege." *Leonen*, 135 F.R.D. at 98 (citing *Upjohn*, 449 U.S. at 389) (applying New Jersey law). "E-mail exchanges are covered by the privilege like any other form of communication." *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010) (citation omitted). The burden of proving that a communication is protected by the

attorney-client privilege lies with "the person or entity asserting the privilege . . . ." *Hedden*, 82 A.3d at 245.

## B. Attorney Work Product Privilege

"The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." *Schering Corp. v. Mylan Pharm., Inc.*, No. 09-cv-6383, 2011 WL 3651343, at *7 (D.N.J. Aug. 18, 2011) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006)). Unlike issues of attorney-client privilege, a uniform federal work product doctrine applies even in diversity cases. *In re Hum. Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 157 (D.N.J. 2008), *judgment aff'd*, No. 06-cv-135, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) (citing *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)).

The federal work product doctrine is set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i), (ii).  The party asserting work product protection bears the burden to show the doctrine applies.  *See Conoco, Inc. v. U.S. Dep't of Just.*, 687 F.2d 724, 730 (3d Cir. 1982).

Courts in this Circuit have adopted a "two part test for ascertaining whether the documents (or things) at issue should be protected under the attorney work product privilege." *In re Gabapentin Pat. Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003). The first inquiry is the "reasonable anticipation" test, "which requires that the court determine at what point in time litigation could reasonably have been anticipated." *Id.* (quoting *United States v. Ernstoff*, 183 F.R.D. 148, 155 (D.N.J. 1998)).  That is a fact-specific analysis, but several legal principals provide the general contours of the reasonable anticipation test.  To meet the anticipation of litigation standard, "a party must show more than a 'remote prospect,' an 'inchoate possibility,' or a 'likely chance of litigation.'"  *Id.* (quoting *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991)); *see Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-cv-11273, 2022 WL 2805637, at *3 (D.N.J. July 18, 2022).  Instead, "a party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'" *In re Gabapentin*, 214 F.R.D. at 183 (quoting *Harper*, 138 F.R.D. at 660).  "The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.' Neither will the mere fact that litigation actually occurred establish that documents prepared before the litigation were created in anticipation thereof." *Id.* (citations omitted).

The second inquiry is whether the documents were "produced because of the prospect of litigation and for no other purpose." *Id.* at 184 (quoting *Harper*, 138 F.R.D. at 660). Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work product doctrine. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990). Ultimately, "[e]ven where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work product privilege still depends primarily on the reason or purpose for the documents' production." *In re Gabapentin*, 214 F.R.D. at 184 (citations omitted).

Finally, "[w]here the applicability of the work product doctrine has been established, courts may nevertheless order factual material produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *Id.* (quoting *Upjohn*, 449 U.S. at 400). Notably, core or opinion work product—meaning the mental impressions, conclusions, opinions, and theories of attorneys or representatives—"receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003); *see also In re Gabapentin*, 214 F.R.D. at 184.

## III.    DISCUSSION

ICSP requests that this Court compel Liberty Mutual to respond in full to its supplemental request for production, which asks for the disclosure of the legal advice—including attorney-client communications and attorney work product—

concerning Liberty Mutual's decision on whether to "investigate [if] Jacobs had professional liability coverage and to tender to any such insurance carriers on behalf of Jacobs for the Silva Action."  ECF No. 106-1 at 4.  The legal advice at issue came from the law firm Cullen and Dykman LLP, Liberty Mutual's outside counsel.  ECF No. 106-6; Guertin Dep. 134:13-14.  To determine whether the Court should compel the production of that information, the Court has to answer several questions: (1) is the information relevant; (2) is the information protected by the attorney-client privilege; (3) is the information protected by the attorney work product privilege; and (4) if any of the privileges apply, has Liberty Mutual waived the privilege?  For reasons stated below, the Court will not compel Liberty Mutual to respond to ICSP's request.

### A. Relevance

The parties dispute whether the requested information is relevant.  ICSP advances only one argument—that legal advice and attorney work product information is relevant because Liberty Mutual has raised a late-notice defense and therefore must show it suffered appreciable prejudice by proving it could have obtained a better result by tendering the claim to another insurer.  *See* ECF No. 110 at 2-3.  Liberty Mutual disagrees and argues that outside counsel's coverage determination is irrelevant at this stage in the litigation and to its choice not to investigate other insurance.  *See* ECF No. 109 at 6-8, 12-14.

Under New Jersey law, an insurer seeking to disclaim coverage based on late notice must show: (1) a breach of the insurance contract's notice provision, and (2) a

"likelihood of appreciable prejudice" resulting from the breach. *See Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 873-74 (N.J. 1968). Appreciable prejudice requires two showings: (1) that "substantial rights have been irretrievably lost," and (2) that the insurer would have had a "likelihood of success . . . in defending against the accident victim's claim." *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 329-30 (N.J. Super. Ct. Law Div. 1980); *see Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 996 (3d Cir. 1996).

The Third Circuit has "long held that the 'right to associate in the defense of [a] claim is too amorphous and cannot . . . constitute [appreciable] prejudice' without a simultaneous showing that 'earlier notice would probably have led to a more advantageous [substantive] result.'" *GEA Mech. Equip. US, Inc. v. First State Ins. Co.*, No. 23-cv-2062, 2024 WL 3738639, at *2 (3d Cir. Aug. 9, 2024) (alternations in original) (quoting *Trs. of the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 898-99 (3d Cir. 1987)). As such, appreciable prejudice cannot be shown only by the insurer's lost opportunity to defend. *Id.* Instead, an insurer must demonstrate either that it could have succeeded in defending the claim at trial or obtained a better settlement. *See id.* at 2.

ICSP argues that the advice of counsel is relevant here as Liberty Mutual "must show that it would have, among other things, investigated the availability of other insurance coverage and tendered to any such insurers had it received timely notice . . . ." ECF No. 106-1 at 6. To start, generally, Liberty Mutual's corporate designee testified, in part, that it was possible that Liberty Mutual would have sought

other coverage, such as professional liability insurance, if it had not received a late notice. *See* Guertin Dep. 126:1-1–128:24. Based on this, Liberty Mutual *could* argue to a fact finder, as part of its late notice affirmative defense, that the late notice deprived it of an opportunity to seek other insurance coverage, *i.e.*, that it suffered an "appreciable prejudice." *See GEA Mech.*, 2024 WL 3738639, at *2. Thus, Liberty Mutual's decision to not investigate whether Jacobs had other insurance is relevant to the late notice defense in general. That does not end the analysis.

Whether outside counsel's coverage advice is relevant to Liberty Mutual's late notice defense is another question entirely. It is important to not lose sight of what ICSP is seeking to compel: privileged information that ICSP argues Liberty Mutual's claim adjuster relied upon "in determining whether to investigate whether Jacobs had professional liability coverage and to tender to any such insurance carriers on behalf of Jacobs for the Silva Action." ECF No. 106-1 at 4. However, no one testified—and ICSP has not proffered any evidence—that Liberty Mutual's claim adjuster relied on legal advice when deciding to not investigate additional coverage. Rather, the record only supports that the claim adjuster relied on legal advice in connection with the coverage position that Jacobs was not an additional insured. Once Liberty Mutual had reached that conclusion, the claim adjuster deduced that there was no reason to investigate further whether Jacobs had other insurance. *See* Guertin Dep. 130:1–133:24. As the corporate designed testified, "it would have been strange to seek out coverage for a non-covered entity, because they're not our insured. We wouldn't be able to step in on their behalf. We would have no grounds for seeking

additional coverage." *Id.* at 133:7-12.  Therefore, the Court is doubtful that ICSP has satisfied its burden of showing relevance.

However, considering that "Rule 26 is to be construed liberally in favor of disclosure, [as] relevance is a broader inquiry at the discovery stage than at the trial stage," *Hussain v. Garland*, No. 23-cv-17062, 2025 WL 1276069, at *2 (D.N.J. May 2, 2025) (citing *CDK Glob., LLC v. Tulley Auto. Grp.*, No. 15-cv-3103, 2018 WL 4259843, at *2 (D.N.J. June 28, 2018)), the Court will assume, for purposes of this Motion, that the initial legal advice of counsel concerning Jacobs not being an additional insured extended to Liberty Mutual's decision not to look for other insurance.  The Court will make that assumption because, even if there was relevant advice of counsel—as to the decision to not investigate if Jacobs had other insurance—the outcome would be the same for the reasons explained below.

## B. The Application and Wavier of the Attorney-Client and Work Product Privileges

Having assumed that the information ICSP seeks to compel is relevant, the Court must now consider (1) whether the challenged documents and communications are protected under the attorney-client privilege or work product privilege, and, if so, (2) whether those privileges have been waived.  It is important to dissect the parties' arguments, though.  The parties dispute whether the advice that outside counsel provided to Liberty Mutual constitutes attorney work product and, if so, whether that privilege was waived.  ECF No. 106-1 at 7-9.  However, ICSP does not dispute that the outside counsel's advice is protected by the attorney-client privilege—only that it was waived.  *See generally* ECF Nos. 106-1, 110.

14

1. **Work Product Privilege**

The Court begins with an analysis of the work product doctrine. The work product doctrine "provides an independent ground upon which litigants may rely for protection of attorney materials prepared for trial" or in anticipation of litigation. *Maldonado v. N.J. ex rel. Admin. Off. of Courts-Prob. Div.*, 225 F.R.D. 120, 130 (D.N.J. 2004) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *In re Gabapentin*, 214 F.R.D. at 182. As explained above, to determine whether the privilege applies, the Court's analysis involves a two-part test—the first of which is the "reasonable anticipation" test, meaning a determination as to when litigation could have reasonably been anticipated. *In re Gabapentin*, 214 F.R.D. at 183.

Notably, "[i]n cases involving insurance claims, determining the trigger date for the work product doctrine's application is especially difficult because investigating and evaluating claims is the routine business of insurance companies." *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, No. 16-cv-01608, 2017 WL 4227930, at *6 (D.N.J. Sept. 22, 2017) (citing cases). "[T]he 'simple involvement of counsel in an insurer's claim investigation does not transform the investigation to one undertaken in anticipation of litigation.'" *Robinson v. Winslow Twp.*, No. 11-cv-00530, 2012 WL 113643, at *4 (D.N.J. Jan. 13, 2012) (quoting *Am. Home Assurance Co. v. United States*, No. 09-cv-00258, 2009 WL 3245445, at *3 (D.N.J. Oct. 7, 2009)). To determine the trigger date for the doctrine's protection for insurance actions, many courts in the Third Circuit have adopted a case-by-case approach, which evaluates factors such as:

> whether the parties were still jointly exploring ways to resolve their differences; whether either party had

> declared a definite position or both were still considering their positions; whether, once a position was declared, what was done would have been done for business purposes, regardless of the possibility of litigation; and what the parties' routine business practice of investigation was.

*Halpin v. Barnegat Bay Dredging Co.*, No. 10-cv-3245, 2011 WL 2559678, at *16 (D.N.J. June 27, 2011) (quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000)); *see Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co.*, No. 20-cv-14338, 2023 WL 8446228, at *7 (D.N.J. June 8, 2023), *aff'd*, No. 20-cv-14338, 2023 WL 6633852 (D.N.J. Oct. 12, 2023) (finding the "case-by-case approach persuasive" and applying it to the privilege dispute at issue).

ICSP argues in broad strokes that "work done before a claims determination has been made is not protected." ECF No. 106-1 at 8. Following that logic, ICSP contends that the legal advice relied upon by Liberty Mutual in making its coverage determination is not protected by the work product doctrine. *Id.* at 9. In opposition, Liberty Mutual asserts that the work product privilege applies because the advice of outside counsel was obtained long after the usual investigation phase—*i.e.*, after a verdict had been reached in the Silva Action, which occurred almost eight months before Liberty Mutual was given notice of the claim. ECF No. 109 at 9. The Court agrees with Liberty Mutual.

Applying the case-by-case approach, here, like in *Formosa*, the Silva Action was long-completed and had already resulted in a large jury verdict of over two-million dollars against Jacobs. *See Formosa*, 2023 WL 8446228, at *10 (noting that after a significant settlement was awarded in the underlying litigation without the

insurer's knowledge or consent, the insurer "shifted from adjudicating [the underlying] claim to reasonably anticipating litigation, even though it had not yet formally denied [the] claim."). Likewise, Liberty Mutual's chance to participate in the defense and evaluate the claim in the traditional sense as part of its routine business activities had passed years ago. Instead, Liberty Mutual's evaluation focused on whether it was obligated to contribute to the judgment in the amount of the policy limit, as ICSP demanded in its contribution and indemnification letter, which hinged upon whether Jacobs was an additional insured under the Liberty Mutual Auto Policy. *See* ECF No. 106-5. Viewing the matter through that lens, the Court cannot find that the communications and work product surrounding outside counsel's coverage determination to be part of Liberty Mutual's routine business activities and typical claim investigations. This was purely a legal issue, one that even required the Court's intervention and resulted in Judge Neals having to issue an opinion. *See* ECF No. 64.

It defies logic to suggest that Liberty Mutual did not anticipate litigation at the time it began investigating coverage of Jacobs after receiving ICSP's demand letter. Liberty Mutual's choice was simple: either agree to ICSP's demand for contribution and/or indemnification, or face almost-certain litigation surrounding same. *See generally* ECF No. 106-5. In fact, ICSP plainly stated as much in its July 2020 letter to Liberty Mutual:

> [P]lease consider this letter a demand for Liberty to cover Jacobs and pay the limits of Policy No. AS2-631-509639-013, $1 million. We ask that Liberty agree to this demand within 30 days. If it does not, *we will pursue appropriate*

> *legal action* to enforce the rights of Jacobs and AIG under
> the Contract and Liberty Policy.

*Id.* at 4 (emphasis added).  In light of the demand for the policy limit of one million dollars, coupled with ICSP's threat of litigation, there can be no doubt that Liberty Mutual's communications with outside counsel were intended to be confidential and made when litigation was reasonably anticipated.  Liberty Mutual has satisfied the first part of the test for the attorney work product privilege.

The second and final part of the test for the attorney work product privilege is whether the documents were "produced because of the prospect of litigation and for no other purpose."  *In re Gabapentin*, 214 F.R.D. at 184.  For the same reasons articulated above, the Court finds that they were.  As both inquiries are satisfied, Liberty Mutual has met its burden of showing that the information at issue is protected by the work product privilege.

## 2.  <u>Waiver of the Attorney-Client and Work Product Privileges</u>

Next, the Court turns to the most pressing issue before it—whether Liberty Mutual waived the attorney-client and work product privileges in this matter by placing the advice of outside counsel "at issue" or "in issue."  For the reasons explained below, the Court finds Liberty Mutual did not.

The Court begins with the attorney-client privilege.  When a party seeks the disclosure of otherwise privileged communications, New Jersey Courts apply the rule set forth in *In re Kozlov*, 398 A.2d 882 (N.J. 1979), which requires that, in order to compel disclosure of otherwise privileged communications, three "foundations" must be established: (1) there must be a legitimate need for the evidence; (2) the evidence

18

must be relevant and material to the issue before the court; and (3) by a fair preponderance of the evidence, the party must show that the information cannot be secured from any less intrusive source. *Id.* at 887. However, the *Kozlov* test has not been applied broadly. *State v. Mauti*, 33 A.3d 1216, 1227-28 (N.J. 2012). The first prong of the *Kozlov* test—the "need prong"—can only be satisfied: "(1) where a constitutional right is at stake, or (2) *a party has explicitly or implicitly waived the privilege*." *Id.* at 1228 (emphasis added).

Applying *Kozlov*, courts have permitted the production of attorney-client communications "where the party claiming the privilege has implicitly waived it by putting the confidential communications 'in issue' in the litigation. Most jurisdictions recognize implicit waiver of the attorney-client privilege where the plaintiff has placed in issue a communication which goes to the heart of the claim in controversy." *Kinsella v. Kinsella*, 696 A.2d 556, 568-69 (N.J. 1997) (citations and internal quotations marks omitted); *see also Mauti*, 33 A.3d. at 1224 ("In essence, . . . the party who places a confidential communication in issue voluntarily creates the 'need' for disclosure of those confidences to the adversary.").

"The 'at issue' doctrine becomes involved when a party has asserted a claim or defense that he intends to prove through the use of privileged materials." *NL Indus., Inc. v. Com. Union Ins. Co.*, 144 F.R.D. 225, 232 (D.N.J. 1992) (citations omitted). In other words, "[a] party may be said to have impliedly waived the privilege protecting its information by taking an action that places such information at issue." *Id.* (citation omitted).

However,

> [a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Rhone-Poulenc*, 32 F.3d at 863.  In addition, the party seeking to pierce the privilege must show that the information cannot be secured from any less intrusive source. *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 826 (N.J. Super. Ct. App. Div. 1984); *see also Payton v. N.J. Tpk. Auth.*, 691 A.2d 321, 335 (N.J. 1997).

Here, ICSP argues that outside counsel's advice was placed "in issue" when Liberty Mutual relied on it to explain why it did not seek or investigate the existence of other applicable insurance coverage for Jacobs before November 22, 2024.  *See generally* ECF No. 106-1.  ICSP contends this amounts to evidence that may be used in its defense of Liberty Mutual's late-notice defense, *i.e.*, to refute that Liberty Mutual "lost a substantial right" to tender coverage.  *Id.* at 16.

The Court does not find that Liberty Mutual placed its reliance on counsel "at issue" in this litigation as the record does not support ICSP's assertion that Liberty Mutual's outside counsel's advice included an analysis or recommendation as to whether Liberty Mutual should look for other insurance.  It is important to further expand on Liberty Mutual's corporate designee deposition testimony for proper context.  When asked whether Liberty Mutual could have investigated the availability of other insurance after ICSP had tendered a demand, the corporate

designee testified: "There would be no reason to, as we said—in our review and after reviewing the policy and discussing with counsel that there was no coverage." Guertin Dep. 130:22–131:3.  He added, "it would have been strange to seek out coverage for a non-covered entity, because they're not our insured.  We wouldn't be able to step in on their behalf.  We would have no grounds for seeking additional coverage."  *Id.* at 133:7-12.  Based upon these excerpts alone, ICSP invites the Court to conclude that this testimony placed outside counsel's legal advice at issue.  The Court declines that invitation.

In context, the corporate designee simply testified that outside counsel had concluded that Jacobs was not covered by the Liberty Mutual Auto Policy at issue.[2]  Once Liberty Mutual confirmed its coverage position, the record only supports that the claim adjuster made the determination not to investigate whether Jacobs had other insurance.  Importantly, there is no indication that outside counsel played any part in that decision or advised the claim adjuster to not investigate the applicability of other insurance.  Rather, after being told that Jacobs was not covered by the policy, the claim adjuster appears to have independently concluded that there was no need to then explore whether Jacobs had other insurance.  That conclusion was explained by the corporate designee, who testified that it would have been "strange to seek out

---

[2]  Significant here, and as explored briefly in Section III.A, Liberty Mutual gave two separate reasons for denying coverage: (1) Jacobs did not qualify as an additional insured under the policy *and* (2) the late notice of the claim precluded coverage.  *See* ECF No. 106-6 at 3 ("Jacobs' failure to tender until after the Silva claim was tried and judgment entered has undoubtedly resulted in appreciable prejudice such that Jacobs has vitiated any right to coverage it may had under the Liberty Mutual Auto Policy. For this reason, even if Jacobs did qualify as an additional insured, which, for the reasons discussed, it does not, Jacobs, nevertheless, vitiated any right to coverage under the Liberty Mutual Auto Policy.").

coverage for a non-covered entity." Guertin Dep. 133:7-12. So, taken as a whole, there is no evidence that outside counsel even advised Liberty Mutual whether to investigate if Jacobs had other insurance. Nor can the Court find that Liberty Mutual has placed that decision "at issue."

Furthermore, the Court notes that Liberty Mutual's corporate designee testified, in detail, about Liberty Mutual's position that it lost substantive rights due to the alleged late notice of the claim, including, *but not limited to*, the right to explore other insurance. *See generally id.* at 102:1–136:24. For example, Mr. Guertin testified that, due to the inability of Liberty Mutual to participate in the defense of Jacobs at trial, it was unable to obtain its own expert, which may have revealed that the allegations were based upon professional liability—facts that would have allegedly prompted Liberty Mutual to contact Jacobs's professional liability carrier for a coverage investigation. *Id.* at 103:1–106:24. Put more broadly, Liberty Mutual argues it lost the right to participate in the defense of Jacobs and could have obtained a better result had it been able to do so.[3] *See generally id.* at 102:1–136:24. Liberty Mutual will be left to its proofs at trial as to those assertions; ICSP's strenuous arguments as to the strength and merit of Liberty Mutual's defense does not

_____

[3] ICSP's reliance on *GEA Mech.*, 2024 WL 3738639, at *3, does not particularly support its arguments, as ICSP's reading of *GEA* is too narrow. In *GEA*, the Third Circuit remanded the matter back to the District Court as "the parties d[id] not discuss whether the insurers *could* have achieved a better *trial result* (or a finding of no liability) had they become involved[, and] the District Court also did not weigh in on th[at] issue." *Id.* at *3, n.12 (emphasis added). Here, Liberty Mutual, through its corporate designee's testimony, advances multiple arguments as to how it could have obtained a better result at trial. *See generally* Guertin Dep. 102:1–136:24. Indeed, ICSP has already been able to test Liberty Mutual's argument that it suffered prejudice due to its failure to timely investigate other applicable insurance to cover the claim. *See id.* ICSP's conclusions as to the strength and legal basis for that particular argument can be addressed at a later stage in this litigation.

automatically permit it to delve into privileged materials in further support of its claims.

Therefore, contrary to ICSP's assertions, though the advice of outside counsel may be marginally relevant, the piercing of the privilege is not justified as the communications themselves were not truly placed "in issue." At no point has Liberty Mutual tried to use privileged information as the proverbial "sword and shield." The record demonstrates that Liberty Mutual does not intend "to *prove* [the late-notice defense] through the use of privileged materials." *NL Indus.*, 144 F.R.D. at 232 (emphasis added). The deposition transcript confirms the same as it makes no mention of the content of those attorney-client communications, nor does it focus solely upon them for justification and support of its late notice defense. *See generally* Guertin Dep. Unfortunately for ICSP, a "[c]ourt cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415 (D. Del. 1992).[4] Moreover, "[i]t is always possible that the client's motive or conduct was influenced by something his attorney told him, but compelling the production cannot be justified *solely as a means to check the [client]'s statements*." *Id.* at 416 (emphasis added).

---

[4] The Court rejects ICSP's attempts to conflate the standard applicable here with the burden of proof imposed on a plaintiff looking to withstand summary judgment on an antitrust claim via its citation to *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 167 n.57 (3d Cir.), *judgment entered sub nom.*, No. 15-2875, 2017 WL 3529114 (3d Cir. Aug. 9, 2017).

Whether ICSP can show a legitimate need for the documents under the *Kozlov* test is irrelevant since there is no "in issue" waiver of the privilege (and no constitutional right at stake in this case). *See Mauti*, 33 A.3d at 1227-28 (highlighting that the first prong of the *Kozlov* test is narrow and can only be established by explicit or implicit waiver or when a constitutional right is at stake). Accordingly, the Court cannot find a waiver of privilege based on *Kozlov*.

For sake of completeness, the Court does not find a legitimate need for the privileged materials. Here, the record makes clear that "[r]ather than rummaging through attorney-client communications and attorney work product, . . . [the privileged] information can be obtained through less intrusive means such as depositions or interrogatories and . . . specific documents already produced by the defendants." *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 72 (D.N.J. 1992). It is without question that ICSP has obtained evidence as to Liberty Mutual's decision not to investigate other coverage via the deposition of Mr. Guertin. *See* Guertin Dep. 128:1–134:24. Moreover, Liberty Mutual's August 7, 2020 response to ICSP's demand letter, sent via outside counsel from Cullen and Dykman LLP, clearly informed ICSP of Liberty Mutual's coverage position–hence, ICSP was fully aware of Liberty Mutual's rationale regarding Jacobs' entitlement to coverage under its policy at the outset of the litigation. *See* ECF No. 106-6. In addition, the record before this Court, including the parties' competing summary judgment motions, reveal that Liberty Mutual never hid its reasoning behind its coverage position and its interpretation of the Liberty Mutual Auto Policy. *See* ECF Nos. 44-46. ICSP's demand for outside

counsel's privileged advice, therefore, is unnecessary.  ICSP's dissatisfaction with Mr. Guertin's testimony does not authorize it to engage in a fishing expedition into privileged materials.

Thus, as explained above, since ICSP cannot establish the first *Kozlov* prong, there is no need to analyze the second and third *Kozlov* prongs.  ICSP has not established an "at issue" waiver, and its request to compel on this basis is **DENIED**.[5]

## IV.    CONCLUSION

For the reasons set forth above, ICSP's motion to compel is **DENIED**.[6]  It is further **ORDERED** that the Clerk of Court shall **TERMINATE** the Motion pending at ECF No. 109.


Dated: September 12, 2025

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

---

[5]  Accordingly, the Court also finds that Liberty Mutual has not waived its work product privilege. Pursuant to Rule 26(b)(3)(A)(ii), materials protected by the work product doctrine may be produced upon a showing that the party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  As set forth above, the privileged information which ICSP seeks may be, and arguably already has been, obtained by other less intrusive means.  Thus, ICSP has shown neither a substantial need for these particular documents and communications, nor that it would suffer undue hardship should it have to obtain equivalent information by other means to warrant a piercing of the protections of the work product privilege.  This is especially true considering the Court finds the requested information to be core or opinion work product. *See In re Cendant*, 343 F.3d at 663 ("core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.").  Indeed, ICSP has failed to show the existence of "rare and exceptional circumstances" that would permit waiver here.

[6]  The Court finds the Motion to be substantially justified; therefore, the Court declines to award fees and costs to Liberty Mutual.  Fed. R. Civ. P. 37(a)(5)(B).